UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 18-80044-CIV-Marra/Matthewman

TAMARA FILIPPOVA,

    Plaintiff,

vs.

ILIA MOGILEVSKY, et al.,

    Defendant.

_____/



## ORDER ON FORMER-DEFENDANTS SAPODILLA 513, LLC, KING DAVID REAL ESTATE INVESTMENT HOLDINGS, LLC AND TAM TAM INVESTMENTS, LLC'S MOTION TO STRIKE OR FOR INVOLUNTARY DISMISSAL OF ACTION WITH PREJUDICE FOR FRAUD ON THE COURT AND FOR SANCTIONS [DE 370]

THIS CAUSE is before the Court upon Former-Defendants, Sapodilla 513, LLC, King David Real Estate Investment Holdings, LLC, and Tam Tam Investments, LLC's ("Movants") Motion to Strike or for Involuntary Dismissal of Action with Prejudice for Fraud on the Court and for Sanctions ("Fraud Motion") [DE 370]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 465. Former-Defendants Tama Beth Kudman Richman and Erikah Bertoloti have filed Notices of Adoption of the Fraud Motion [DEs 372, 382]. Plaintiff Tamara Filippova and Former-Defendant Natalia Mogilevsky have filed responses to the Fraud Motion [DEs 401, 418]. Movants have filed a reply in support of the Fraud Motion [DE 421].

The Court held an evidentiary hearing on the Fraud Motion on February 4, 2019. At the February 4, 2019 hearing, the Court gave the parties the opportunity to file supplemental memoranda on or before February 15, 2019, in lieu of making closing arguments. Counsel for

Plaintiff, Gary Rosen, Esq., and counsel for Natalia Mogilevsky, Stuart Kaplan, Esq., filed a joint supplemental memorandum [DE 511] on counsel's behalf, but not on behalf of either Plaintiff or Natalia Mogilevsky. Movants also filed a supplemental memorandum [DE 512]. Thereafter, Former-Defendants Tama Beth Richman Kudman and Erikah Bertoloti filed Notices of Adoption of Movants' supplemental memoranda [DEs 514, 516]. Finally, Mr. Rosen and Mr. Kaplan filed a "Three Sentence Reply to Defendants Sapodilla 513, LLC, Et Al [sic] Supplemental Memorandum" [DE 515].

## I.     BACKGROUND

Plaintiff Tamara Filoppova, the mother of Former-Defendant Natalia Mogilevsky, filed her initial Complaint [DE 1] against multiple defendants on January 16, 2018. The initial federal Complaint was filed shortly after Natalia Mogilevsky had filed a dissolution of marriage action against her husband, Ilia Mogilevsky, on November 11, 2017, in the Fifteenth Judicial Circuit, in and for Palm Beach County. [DE 370, p. 2, f.n. 1]. As noted above, one of the defendants named in the federal Complaint was Natalia Mogilevsky, Plaintiff's daughter. Plaintiff filed her First Amended Complaint [DE 119] on February 28, 2018. While the other defendants filed motions to dismiss the First Amended Complaint [DEs 143, 186, 187, 194, 195, 196, 197, 224, 226, 227], Natalia Mogilevsky filed an answer which admitted liability and asserted crossclaims [DE 193]. Plaintiff then filed a motion to amend her complaint [DE 237], which was granted. *See* DE 272.

On May 26, 2018, Plaintiff filed her Second Amended Complaint [DE 273]. Again, the defendants other than Natalia Mogilevsky filed motions to dismiss [DEs 276, 277, 279, 282, 285, 290, 293, 294, 295, 319]. Again, Ms. Mogilevsky filed an answer which admitted liability and

asserted crossclaims [DE 309]. While the motions to dismiss the Second Amended Complaint remained pending, the instant Fraud Motion was filed on August 1, 2018.

Thereafter, on August 29, 2018, Judge Marra entered an Order Granting Motions to Dismiss the Second Amended Complaint [DE 415]. Judge Marra granted all of the pending motions to dismiss, partially on shotgun pleading grounds and partially on merit grounds. *Id.* at p. 12. Judge Marra explicitly dismissed several of the counts with prejudice. *Id.* at pp. 10-12. Judge Marra specifically noted that the 277-page, 1565-paragraph Second Amended Complaint was "at best incoherent and riddled with redundancy," and that reading it was a "mind numbing experience." *Id.* at p. 6.[1]

Plaintiff filed her Third Amended Complaint [DE 423] on September 18, 2018, and did not name Natalia Mogilevsky as a defendant.

## II. THE FRAUD MOTION, RESPONSES, AND REPLY

The Fraud Motion first sought the striking or dismissal of Plaintiff's federal lawsuit with prejudice [DE 370, p. 1]. However, dismissal is now a moot issue since all of Plaintiff's causes of actions have been dismissed, abandoned, or resolved. No current complaint remains pending before the Court.

The Fraud Motion next sought an award of attorney's fees and costs against Plaintiff and her counsel, Mr. Rosen, and against Former-Defendant Natalia Mogilevsky and her counsel, Mr. Kaplan. [DE 370, p. 1]. In summary, Movants argued that Plaintiff and Former-Defendant Natalia Mogilevsky, and their counsel, acted in concert to create an illegitimate sham lawsuit and

---

[1] The undersigned has also found in his recent Reports and Recommendations recommending the award of attorney's fees to various former-defendants that the First and Second Amended Complaints were deficient, that they were rambling, confusing and disjointed, and that it is shocking that a member of the Florida Bar would file such woefully deficient complaints. *See* DEs 502, 503, 510, and 517.

pervert the legal system. *Id.* According to Movants, this federal action was filed soon after Natalia Mogilevsky filed a dissolution of marriage action, and the intent of this federal lawsuit was to prevent certain assets from being equitably distributed in the dissolution of marriage action. *Id.* at p. 2, f.n. 1 & 2. Movants maintained that Plaintiff's counsel, Gary Rosen, drafted pleadings for Natalia Mogilevsky, including an answer admitting liability and crossclaims, a fact uncovered by their forensics computer expert. *Id.* at pp. 2-11. Movants argued that Plaintiff and Natalia Mogilevsky committed a fraud on the court in an effort to falsely create diversity jurisdiction by listing Natalia as a defendant, when, in reality, she was a proper plaintiff. *Id.* at p. 15.

Plaintiff's Response argued that this lawsuit is not a sham and that Natalia Mogilevsky is a necessary defendant to permit complete relief to Plaintiff. [DE 401]. Plaintiff asserted that this federal action is not "leverage" for the dissolution of marriage action between Natalia Mogilevsky and her husband, Ilia Mogilevsky. *Id.* at p. 6. Plaintiff contended that she and Natalia have a "common interest" in having the monies Plaintiff entrusted to her daughter and her daughter's husband repaid to her. *Id.* at p. 10. Finally, Plaintiff admitted that her counsel and Natalia's counsel worked together in this lawsuit. *Id.* at p. 12.

Former-Defendant Natalia Mogilevsky's Response asserted that no fraud on the court has occurred. [DE 418]. Natalia argued that Plaintiff's counsel, Gary Rosen, and her counsel, Stuart Kaplan, often work together on cases and that counsel jointly cooperated in this case for the benefit of Plaintiff and Natalia. *Id.* at p. 6.

In their Reply, Movants again argued that Plaintiff and Natalia Mogilevsky have committed a fraud on the court and hid their cooperation from the Court and from the other

4

parties in the case. [DE 421].

### III. EVIDENTIARY HEARING

On February 1, 2019, the Court entered its Omnibus Order on Motions Related to the February 4, 2019 Evidentiary Hearing and Order Providing Instructions to Counsel Regarding the Scope of Evidence and Testimony to Be Considered by the Court [DE 495]. The Order specified the scope of the evidentiary hearing. Additionally, prior to the start of the hearing, the parties entered into a Stipulation Regarding Expert Testimony [DE 500].

The Court held the evidentiary hearing on February 4, 2019. *See* DE 499. Gary Rosen, counsel for Plaintiff Tamara Filippova, testified, and Stuart Kaplan, counsel for Former-Defendant Natalia Mogilevsky, testified. [DEs 501, 513]. No additional witnesses testified, and no exhibits other than the Stipulation Regarding Expert Testimony [DE 500] were introduced at the evidentiary hearing.

A week after the evidentiary hearing, on February 11, 2019, a Notice of Receipt of Emails by Counsel for Defendant's [sic] Sapodilla 513, LLC, King David Real Estate Investment Holdings, LLC and Tam Tam Investments, LLC [DE 504] was filed with the Court. The attached emails are allegedly from Plaintiff to her counsel, Mr. Rosen, and from Natalia Mogilevsky to her counsel, Mr. Kaplan. [DEs 504-1, 504-2, and 504-3]. Both women request that their respective counsel withdraw from the case, and Plaintiff's email alleges that her counsel, Mr. Rosen, has "committed fraud on the court." *Id.*

### IV. SUPPLEMENTAL MEMORANDA

Movants submitted a supplemental memorandum, as did Mr. Rosen and Mr. Kaplan on their own behalf. The Court notes that no supplemental memorandum was submitted on behalf

5

of Plaintiff or on behalf of Former-Defendant Natalia Mogilevsky; instead, a supplemental memorandum was submitted on behalf of Mr. Rosen and Mr. Kaplan. *See* DE 511.[2]

In their memorandum, Mr. Rosen and Mr. Kaplan argue that "[t]here was no fraudulent creation of diversity jurisdiction" because Natalia Mogilevsky was not a real party in interest plaintiff, and she was a proper defendant since she had fiduciary duties to Plaintiff in that she held Plaintiff's power of attorney. [DE 511, p. 2]. Mr. Rosen and Mr. Kaplan also argue that there was "no conflict of interest or collusion" in that Mr. Rosen did not actually author any of Mr. Kaplan's pleadings. *Id.* at pp. 2-3. According to Mr. Rosen and Mr. Kaplan, Mr. Kaplan often used Mr. Rosen's templates for motions and other legal filings, but he "made his own substantive statements in the pleadings." *Id.* at p. 7. Mr. Rosen and Mr. Kaplan additionally maintain that the fact that Natalia's father paid her legal fees did not amount to a violation of the Florida Bar Rules. *Id.* at p. 5.

In their supplemental memorandum, Movants contend Mr. Rosen's and Mr. Kaplan's testimony at the evidentiary hearing lacked credibility. [DE 512, p. 7]. They assert that there is clear and convincing evidence that Plaintiff and Natalia Mogilevsky perpetrated a fraud on the Court in that they came to an agreement "under which Plaintiff drafted pleadings and documents for and in conjunction with Natalia, without the knowledge of the Court and other Defendants in the action." *Id.* at p. 11. Movants argue that "[m]ultiple inconsistencies about whether Natalia could have been a plaintiff on behalf of herself, or on behalf of her Mother, and whether Natalia was a 'friendly defendant' or 'adverse defendant' further evidence the fraud perpetrated on the Court. Pleadings and testimony show conflicting assertions as to Natalia's position in the

---

[2] It should be noted that Mr. Rosen and Mr. Kaplan have not yet been permitted to withdraw from this case by the Court.

case." *Id.* at p. 15. Movants contend that it is clear that, "unbeknownst to Movants and the Court, Plaintiff's counsel met with Natalia and her counsel, including at least one meeting in which Natalia's investigator presented Plaintiff's counsel with evidence against Natalia, and worked together in drafting of pleadings, Rule 26 disclosures and other court filed documents." *Id.*

Movants further argue that, according to the relevant case law, Natalia Mogilevsky could have been a plaintiff on behalf of her mother as the holder of the power of attorney, and diversity of citizenship would have been maintained. [DE 512, pp. 15-16]. They contend that Natalia was not named as a plaintiff on behalf of her mother for purely improper, strategic reasons. *Id.* at p. 16. Finally, Movants maintain the "secret agreement between Plaintiff and Natalia meets several elements for a Mary Carter agreement," but that the "secret agreement between Plaintiff and Natalia and their attorneys is graver than a Mary Carter agreement because the circumstances, pleadings, and testimony show Plaintiff was drafting pleadings for Natalia, and the agreement was formed at the inception of the lawsuit." *Id.* at p. 19.

Mr. Kaplan and Mr. Rosen filed a reply [DE 515], on their own behalf, to Movants' supplemental memoranda even though they did not attempt to secure the Court's leave to do so. In the reply, Mr. Kaplan and Mr. Rosen acknowledge that they "shared information and work product." *Id.* They argue, however, that the "mother and daughter relationship was tangled; translating it via the lawsuit was maladroit, but it was not 'fraud.' Making Natalia a plaintiff would have merely made it a state court matter; there was no 'fraudulent' advantage to being in federal court." *Id.*

## V. ANALYSIS

At the time the Fraud Motion was filed, Movants were seeking an Order striking Plaintiff's Second Amended Complaint, involuntarily dismissing the action with prejudice, and imposing sanctions against Plaintiff. There is no longer an operative complaint in this case as all of Plaintiff's causes of action have been dismissed, abandoned, or resolved. *See* DEs 423, 467, 492. There is no pending complaint. Clearly, Movants' Fraud Motion is moot and due to be denied to the extent that it seeks the striking of a complaint or involuntary dismissal. The only issue left for the Court to determine is whether Movants have established by clear and convincing evidence that Plaintiff and Former-Defendant Natalia Mogilevsky and/or their counsel perpetrated a fraud on the court or acted in bad faith, and if so, what the appropriate sanctions--in the form of attorney's fees and costs--should be.[3]

### A. Fraud on the Court

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier [of fact] or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). "[P]roving a fraud on the court requires 'clear and convincing evidence of an unconscionable plan designed to improperly influence the court in its decision.'" *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2016 WL 3944176, at *4 (S.D. Fla. Feb. 9, 2016), *report and recommendation adopted*, No. 14-CIV-60885, 2016 WL 3944178 (S.D. Fla. Mar. 17, 2016) (quoting *Johnson v.*

---

[3] The Court also notes that the pending Fraud Motion is not seeking Rule 11 sanctions, so the only way that Movants can recover reasonable attorney's fees and costs is if the Court finds that there was a fraud on the court or that Mr. Rosen and/or Mr. Kaplan have acted in bad faith, as further explained later in this Order.

*Law Offices of Marshall C. Watson, PA*, 348 Fed.Appx. 447, 448 (11th Cir. 2009).

"Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of the jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud upon the court." *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605, 2015 WL 2415421, at *9 (S.D. Fla. May 21, 2015) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)). The Eleventh Circuit has "consistently held that a fraud between parties is not fraud on the court" even "declar [ing] ... that perjury does not constitute fraud on the court." *Patterson v. Lew*, 265 F. App'x 767, 769 (11th Cir. 2008) (citing *S.E.C. v. ESM Grp., Inc.*, 835 F.2d 270 (11th Cir.1988)). "Fraud on the court is therefore limited to more egregious forms of subversion of the legal process ... those we cannot necessarily expect to be exposed by the normal adversary process." *Idearc Media Corp. v. Kimsey & Assocs., P.A.,*, 2009 WL 928556, at *5 (M.D. Fla. Mar. 21, 2009) (quoting *Great Coastal Express v. International Broth. of Teamsters, Chauffeurs, Warehousemen*, 675 F.2d 1349, 1357 (4th Cir.1982)).

After carefully reviewing the papers, testimony, and stipulation, and the entire docket in this case, the Court finds that Movants simply have not met their heavy burden of establishing fraud on the court in this case. While Mr. Kaplan and Mr. Rosen clearly engaged in very suspicious and highly unusual, surreptitious conduct, failed to answer some questions directly at the evidentiary hearing, and effectively bungled the pleadings in this case, Movants have not shown by clear and convincing evidence that Plaintiff, Mr. Rosen, Natalia Mogilevsky, and/or Mr. Kaplan engaged in fraud on the court.

The Court notes that, in the Stipulation Regarding Expert Testimony [DE 500], the parties stipulated that the following docket entries were filed by Former-Defendant Natalia

9

Mogilevsky's counsel, Mr. Kaplan, but originated on Plaintiff's counsel's computer: DE 193, DE 38, and DE 354.[4]  An example of the troubling nature of these docket entries is DE 193, in which Natalia Mogilevsky answered Plaintiff's poorly drafted First Amended Complaint, which complaint failed to state a cause of action, admitted liability, and then filed crossclaims against Tama Beth Kudman and Ilia Mogilevsky.  The fact that this pleading filed by Former-Defendant Natalia Mogilevsky was initiated on Plaintiff's counsel's computer, and partially typed by Plaintiff's counsel, is very troubling.  Why would Plaintiff's counsel be drafting an answer admitting liability and asserting crossclaims against other persons on behalf of Natalia Mogilevsky, a defendant?

At the evidentiary hearing, Plaintiff's counsel, Mr. Rosen, and Natalia Mogilevsky's counsel, Mr. Kaplan, testified that they met in Mr. Rosen's office and that, at times, Mr. Rosen would read the First Amended Complaint and Second Amended Complaint to Mr. Kaplan while Mr. Kaplan typed the text in the answers and crossclaims, and then, because Mr. Rosen was a faster typist, he would type while Mr. Kaplan stated what text to type in the pleadings.  [DE 513-1, p. 27, lines 5-19; p. 34, lines 1-4; p. 34, lines 24-25; p. 35, lines 11-15; p. 35, lines 19-20; p. 51, lines 1-10; p. 51, lines 14-25; p. 52, lines 2-14; p. 60, lines 13-25; p. 61, lines 1-5; p. 65; lines 17-22; p.77, lines 5-13].  This is a very bizarre arrangement between counsel in a case where Plaintiff was suing Natalia Mogilevsky and others for over four million dollars.

While this arrangement raises suspicions of improper conduct and surreptitious behavior of Mr. Rosen and Mr. Kaplan, there simply is not clear and convincing evidence of an actual fraud on the court based upon the limited record before the Court.  This is especially true where neither Plaintiff nor Former-Defendant Natalia Mogilevsky appeared at the evidentiary hearing

---

[4] Other documents are also referenced in the Stipulation Regarding Expert Testimony.

10

or testified as to their consent or lack of consent to such a bizarre arrangement between counsel for opposing parties. And, although Plaintiff has purportedly sent an email stating that Mr. Rosen committed fraud on the court, Plaintiff has not come forward to testify or support such a claim. Therefore, the Court cannot give her email any weight, although it does further raise suspicions as to counsel's conduct in this case.

The Court also finds that Movants have not shown by clear and convincing evidence that Natalia Mogilevsky was named as a defendant in the Complaint, First Amended Complaint, or Second Amended Comlpaint solely to create diversity jurisdiction. Again, although the designation of Natalia Mogilevsky as a defendant, combined with the fact that Plaintiff's counsel admittedly aided Natalia Mogilevsky's counsel by typing certain pleadings and providing templates for those pleadings, including an answer admitting liability and asserting crossclaims, is highly suspicious and seemingly improper, especially if undertaken without express client consent, Movants have not shown by clear and convincing evidence that Mr. Rosen and Mr. Kaplan committed fraud on the court. According to the testimony of Mr. Rosen and Mr. Kaplan, Mr. Kaplan allegedly borrowed templates from Mr. Rosen, the two attorneys had meetings regarding the case (sometimes with Natalia Mogilevsky present), Mr. Kaplan's investigator made a presentation of the facts of the case to Mr. Rosen before he filed any complaint, and Mr. Rosen typed a portion of the two answers and crossclaims filed by Natalia Mogilevsky in this case at the direction of Mr. Kaplan. From the evidence and testimony presented, the Court is unable to find a fraud on the court by clear and convincing evidence.

The Court has also considered the fact that Natalia Mogilevsky was the only defendant to answer and admit the allegations in Plaintiff's incredibly poorly written complaints, but this fact

alone, while clearly raising suspicions, does not establish fraud on the court by clear and convincing evidence—especially in light of Mr. Rosen and Mr. Kaplan's testimony that they believed that Ms. Mogilevsky was obligated to answer the complaints and participate in the lawsuit due to her ongoing duties to Plaintiff as Plaintiff's power of attorney. *See, e.g.*, DE 513-1, p. 21, lines 6-10; p. 25, lines 18-21; p. 57, lines 10-14; p. 53, lines 14-18. Finally, Movants have not established by clear and convincing evidence that Plaintiff and Natalia Mogilevsky and/or their counsel entered into an illegal and improper analogous to an improper Mary Carter agreement.

The Court emphasizes that there is a limited evidentiary record before the Court. Neither Plaintiff nor Natalia Mogilevsky testified. In fact, there was no testimony presented by Movants in an effort to contradict that of Mr. Kaplan and Mr. Rosen. Case law has established that the threshold for establishing fraud on the court is very high, and that even evidence of fraud on other parties is insufficient. The Court is not at all pleased with the conduct of Mr. Rosen or Mr. Kaplan in this case. However, Movants simply have not established that the conduct of Plaintiff, Natalia Mogilevsky, and their counsel was egregious enough to merit a finding of fraud on the court in this case.

### B. Sanctions Pursuant to the Court's Inherent Power

The Court can also award attorney's fees and costs pursuant to the Court's inherent power, even if the Court concludes that there has not been fraud on the court.

The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations and quotation

marks omitted). Courts have long been recognized as having certain implied powers that are "necessary to the exercise of all others." *Id.* at 43 (citing *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812) and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. at 43 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). A court's "inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* at 46. A federal court possesses the inherent power to impose sanctions when there has been willful misconduct. *See Id.* at 44.

To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith. *McDonald v. Cooper Tire & Rubber Co.,* 186 Fed. Appx. 930, 931 (11th Cir. 2006); *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002); *see also Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1320 (11th Cir. 2002) (noting that "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith.") (citation and quotations marks omitted). The Court has the ability to assess attorney's fees and costs against the client or his attorney, or both, when the client or attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *McDonald,* 186 Fed. Appx. at 931 (citation omitted). A party seeking to invoke this inherent power must prove bad faith by clear and convincing evidence. *See JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts and Quartz Crystals,* 93 F.Supp.3d 1331 (S.D.Fla. 2015), aff'd sub *nom JTR Enterprises, LLC v. Columbian*

13

*Emeralds,* 697 F. App'x 976 (11th Cir. 2017); *Barash v. Kates,* 585 F.Supp.2d 1347, 1365 (S.D. Fla. 2006).

With these principles in mind, the Court must determine whether sanctions in the form of attorney's fees, costs, or expenses against Plaintiff, Natalia Mogilevsky, Mr. Kaplan, and/or Mr. Rosen, are appropriate, and if so, the nature of the sanctions that should be imposed. Having considered all of the filings in this case and the testimony and evidence admitted at the February 4, 2019 hearing, the Court finds that an award of attorney's fees and costs is not warranted in this case.

With regard to Plaintiff and Natalia Mogilevsky, there is really no evidence of bad faith or vexatiousness. It appears, based on the testimony adduced at the evidentiary hearing, that the two women simply relied on their attorneys' advice throughout this case and were not active participants in the litigation strategy. In fact, Mr. Rosen and Mr. Kaplan retained their own counsel, Bruce Rogow, Esq., for the evidentiary hearing and then the attorneys themselves testified at said hearing rather than calling Plaintiff or Natalia Mogilevsky to testify. This is an implicit acknowledgment that, if any sanctions were to be awarded, it was due to counsel's conduct and not to the parties' conduct. No attorney's fees or costs should be imposed against Plaintiff or Natalia Mogilevsky with regard to the Fraud Motion [DE 370] as no evidence has been presented that would support such an imposition of sanctions against the parties.

Next, the Court must determine whether Movants have established by clear and convincing evidence that Mr. Kaplan and Mr. Rosen acted in bad faith in this case. As noted previously, the Court is not pleased with Mr. Kaplan's or Mr. Rosen's conduct in this case. Even Mr. Rogow, counsel for Mr. Rosen and Mr. Kaplan, deems some of their efforts in this

case to be "maladroit." [DE 515]. That is certainly true. Both attorneys behaved in a very suspicious and surreptitious manner throughout this case regarding their joint drafting of pleadings and other documents on behalf of their clients. The various complaints were shoddily drafted, as were Former-Defendant Natalia Mogilevsky's answers and cross-claims. Moreover, both attorneys failed at times during the evidentiary hearing to provide clear and straightforward responses to some of the questions posed to them at the evidentiary hearing.[5]

However, the Court finds, based upon the limited record before the Court, that the conduct of both Mr. Rosen and Mr. Kaplan in this case does not constitute willful misconduct, but rather negligence. Based upon the limited record, the Court cannot find bad faith on behalf of Mr. Rosen or Mr. Kaplan. The Court also notes that, after the instant Fraud Motion was filed, Plaintiff omitted Movants from the Third Amended Complaint. If Plaintiff had again listed them as defendants, especially in light of Judge Marra's Order dismissing the Second Amended Complaint, the Court might find an award of fees and costs to be appropriate. Given the specific facts of this case, however, the Court chooses to exercise its discretion in this matter and not to enter an award of attorney's fees, costs, or expenses against Mr. Rosen or Mr. Kaplan.

### C. Possible Violations of the Florida Bar Rules

The Court also deems that it is not appropriate for this Court to formally determine, on the limited record before it, whether or not Mr. Kaplan or Mr. Rosen violated the Rules Regulating the Florida Bar given the above findings and given that this case will be closed shortly, thereby divesting the Court of jurisdiction. Although the conduct of Mr. Rosen and Mr. Kaplan raises issues of conflict of interest, candor to the court and to other parties, and other potential Florida Bar Rule violations, the Court shall not decide these serious issues on this

---

[5] *See, e.g.*, DE 513-1, p. 31, lines 6-25; p. 32, lines 1-20; p. 73, lines 16-25.

limited record. The Florida Bar is the proper authority to determine such issues in the event that a Bar complaint is filed by any party or counsel in this case.

## VI. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS AND ADJUDGES** that Former-Defendants, Sapodilla 513, LLC, King David Real Estate Investment Holdings, LLC, and Tam Tam Investments, LLC's Motion to Strike or for Involuntary Dismissal of Action with Prejudice for Fraud on the Court and for Sanctions [DE 370] is **DENIED** in its entirety.

**DONE and ORDERED** in Chambers this 6th day of March, 2019, at West Palm Beach, Palm Beach County in the Southern District of Florida.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE